# EXHIBIT A

STATE OF WISCONSIN CIRCUIT COURT FOND DU LAC COUNTY

LESLIE C. ROBINS,
W3953 Winnebago Heights
Malone, Wisconsin 53049,

    and

COLLEEN T. DeVRIES-CALIENDO,
693 Dublin Drive
Hartford, Wisconsin 53027,

       Plaintiffs,

   v.

SETTLEMENT FUNDING, LLC,
d/b/a PEACHTREE SETTLEMENT FUNDING,
3301 Quantum Boulevard, 2nd Floor
Boynton Beach, Florida 33426,

    and

PSF HOLDINGS,
3301 Quantum Boulevard, 2nd Floor
Boynton Beach, Florida 33426,

    and

PSF TRUST 2000-2,
3301 Quantum Boulevard, 2nd Floor
Boynton Beach, Florida 33426,

    and

PEACHTREE FINANCIAL SOLUTIONS, LLC,
3301 Quantum Boulevard, 2nd Floor
Boynton Beach, Florida 33426,

      Defendants.

ASSIGNED JUDGE
DALE L. ENGLISH

FILED

MAY 2 9 2009

MARY L. KARST
FOND DU LAC COUNTY WIS
Clerk Of Circuit Court

Case No. 09-CV 519

Case Code 30301

---

## SUMMONS

---

THE STATE OF WISCONSIN, To the above-named defendants:

You are hereby notified that the plaintiffs named above have filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within 45 days of receiving this summons, you must respond with a written answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is 160 South Macy Street, P.O. Box 1355, Fond du Lac, Wisconsin 54935-4241, and to the plaintiffs' attorneys, Dean P. Laing of O'Neil, Cannon, Hollman, DeJong S.C., whose address is 111 East Wisconsin Avenue, Suite 1400, Milwaukee, Wisconsin 53202. You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated this 29th day of May, 2009.

O'NEIL, CANNON, HOLLMAN, DEJONG S.C.
Attorneys for Plaintiffs

By: _____
Dean P. Laing
State Bar No. 1000032

Post Office Address:
111 East Wisconsin Avenue, Suite 1400
Milwaukee, Wisconsin 53202-4870
(414) 276-5000

2

STATE OF WISCONSIN      CIRCUIT COURT      FOND DU LAC COUNTY

---

LESLIE C. ROBINS and
COLLEEN T. DeVRIES-CALIENDO,

         Plaintiffs,

     v.

                            09-CV 519

                            Case No. _____

SETTLEMENT FUNDING, LLC,
d/b/a PEACHTREE SETTLEMENT FUNDING,
PSF HOLDINGS, LLC, PSF TRUST 2000-2 and
PEACHTREE FINANCIAL SOLUTIONS, LLC,

                            FILED

                           MAY 2 9 2009

         Defendants.           MARY L. KARST
                       FOND DU LAC COUNTY, WIS.
                       ~~Clerk Of Circuit Court~~

---

## COMPLAINT

---

     The plaintiffs, Leslie C. Robins and Colleen T. DeVries-Caliendo, by their attorneys, O'Neil, Cannon, Hollman, DeJong S.C., hereby file this complaint against the defendants, Settlement Funding, LLC, d/b/a Peachtree Settlement Funding, PSF Holdings, LLC, PSF Trust 2000-2 and Peachtree Financial Solutions, LLC, and allege as follows:

     1.     The plaintiff, Leslie C. Robins ("Robins"), is an adult resident of the State of Wisconsin, currently residing at W3953 Winnebago Heights, Malone, Wisconsin 53049.

     2.     The plaintiff, Colleen T. DeVries-Caliendo ("DeVries-Caliendo"), is an adult resident of the State of Wisconsin, currently residing at 693 Dublin Drive, Hartford, Wisconsin 53027.

     3.     The defendant, Settlement Funding, LLC, is a Georgia limited liability company doing business as Peachtree Settlement Funding ("Peachtree Settlement Funding"), with its principal place of business at 3301 Quantum Boulevard, 2nd Floor, Boynton Beach, Florida 33426.

4.    The defendant, PSF Holdings, LLC ("PSF Holdings"), is a Georgia limited liability company, with its principal place of business at 3301 Quantum Boulevard, 2nd Floor, Boynton Beach, Florida 33426.

5.    The defendant, PSF Trust 2000-2, is a business trust formed under the Delaware Business Trust Act, with its principal place of business at 3301 Quantum Boulevard, 2nd Floor, Boynton Beach, Florida 33426. Its initial sponsors were PSF Holdings and Peachtree Financial Solutions, Inc.

6.    The defendant, Peachtree Financial Solutions, LLC ("Peachtree Financial Solutions"), is a Georgia limited liability company, with its principal place of business at 3301 Quantum Boulevard, 2nd Floor, Boynton Beach, Florida 33426.

7.    On July 7, 1993 Robins purchased a Powerball lottery ticket through the Wisconsin Lottery at a Sentry Foods store located in Fond du Lac, Wisconsin, while at the store purchasing contact lens cleaner for his then fiance, DeVries-Caliendo. DeVries-Caliendo had given Robins money to purchase the Powerball lottery ticket and the contact lens cleaner. At the time, Robins was a junior high school teacher, and DeVries-Caliendo was a hospital nurse.

8.    During the Powerball drawing held later that day, the Powerball lottery ticket purchased by Robins was selected as the sole winning ticket of the $111,240,480 jackpot, to be paid in 20 equal annual installments of $5,562,024, with the first installment due immediately.

9.    On July 20, 1993 Robins and DeVries-Caliendo jointly filed a lawsuit in the Dane County Circuit Court, State of Wisconsin, seeking an order that they each be declared 50% owners of the winning Powerball lottery ticket. *See* Case No. 93-CV-2844. On August 5, 1993 the court issued an order declaring that:

2

Leslie C. Robins and Colleen T. DeVries are each entitled to receive one-half of the annual payment due under the Ticket this year and every year for the following 19 years.

The Defendants [which included the Lottery Division of the Wisconsin Gaming Commission, among others] and their successors in office and specifically the Defendant Administrator of the Lottery Division and his successors in office shall direct payment of one-half of the proceeds of the Ticket to Leslie C. Robins and one-half of the proceeds of the Ticket to Colleen T. DeVries each year for 19 years hereafter on the anniversary date of the drawing.

10. In 2000 representatives of Peachtree Settlement Funding initiated discussions with representatives of Robins and DeVries-Caliendo on the subject of Peachtree Settlement Funding potentially purchasing the remaining lottery payments due Robins and DeVries-Caliendo. According to its website, Peachtree Settlement Funding is part of a family of related companies formed in 1996 for the purpose of purchasing lottery payments, structured settlement payments, annuity payments and life insurance policies. At the time, Robins and DeVries-Caliendo were each entitled to 12 additional annual payments of $2,781,012 in connection with their lottery winnings. Peachtree Settlement Funding sent various representatives, including James D. Terlizzi ("Terlizzi"), its Chief Executive Officer, and Laura Kodner, its Sales Manager-Broker Division, to Fond du Lac County, State of Wisconsin, to make presentations to representatives of Robins and DeVries-Caliendo in an attempt to convince them to sell their remaining lottery payments to Peachtree Settlement Funding. Peachtree Settlement Funding's efforts were ultimately successful.

11. On November 6, 2000 Robins and DeVries-Caliendo each entered into identical Sale Agreements for Lottery Prize Payments with PSF Holdings. Pursuant to the agreements, Robins and DeVries-Caliendo each sold all of their right, title and interest in and to their remaining lottery payments to PSF Holdings for the "approximate amount of $22,324,550"

3

(representing the present value of the future stream of payments), with the "exact Purchase Price . . . [to] be equal to the lump sum amount offered by the Lottery Division (as defined herein), less three percent (3%) for Purchaser's fee in connection with this transaction." The agreement was contingent on Robins and DeVries-Caliendo obtaining a court order approving the sale and directing the Wisconsin Lottery Division to make all future payments due them as lottery winners directly to PSF Holdings. The agreements additionally provided that:

> Contemporaneous with the execution of this Sale Agreement, Purchaser shall organize a new, wholly owned bankruptcy remote entity. Said entity will be a Delaware Business Trust with a mutually agreeable Trustee or Trustees (the "Trust"). Upon completion of the organization of the Trust, the Trust will proceed to purchase 100% of the remaining Lottery Payments in exchange for two Promissory Notes totaling approximately $22,324,550.00 (the "Notes").

> The Trust will cause the first Note ("First Note") in the amount of approximately $14,562,304.00 to be issued within sixty (60) days from the sale of the remaining Lottery Payments or within ten (10) days from the receipt of the cash payment from the State of Wisconsin, Department of Revenue, Lottery Division (the "Lottery Division"), whichever last occurs.

> The Trust will cause the second Note ("Second Note") in the amount of approximately $7,762,246.00 to be issued within ten (10) days of the Trust's receipt of the tax refund withheld by the Lottery Division.

> . . .

> Immediately upon its receipt of the tax refund, the Trust will deposit said refund with DB Alex.Brown, at which point, both Notes will be guaranteed by Deutsche Bank. . . .

The agreements further provided that they "shall be governed by and construed in accordance with the laws of Wisconsin without regard to principles of conflicts of law," and that "[i]n the event of any dispute between the parties concerning this Sale Agreement or the Terms Rider or the transactions contemplated hereby or thereby, the prevailing party shall be entitled to recover

4

its costs and expenses, including reasonable attorney's fees, incurred in connection with such dispute."

12.     On or before November 8, 2000, PSF Holding created the PSF Trust 2000-2, which was the new, wholly owned bankruptcy remote entity used for purposes of purchasing 100% of the remaining lottery payments due Robins and DeVries-Caliendo.

13.     On November 8, 2000 PSF Holdings and the PSF Trust 2000-2 entered into two identical Agreements, one relating to Robins and one relating to DeVries-Caliendo, pursuant to which PSF Holdings "assign[ed] to PSF Trust 2000-2, 12 annual payments each in the amount of $2,781,012.00." The Agreements further provided that they are "subject to the laws of the State of Wisconsin."

14.     On November 27, 2000 Robins and PSF Holdings jointly filed a lawsuit in the Dane County Circuit Court, State of Wisconsin, seeking an order approving Robins' sale to PSF Holdings and directing that the Wisconsin Lottery Division make all future payments due Robins as a lottery winner directly to PSF Holdings, or its assignee. *See* Case No. 00-CV-3160. DeVries-Caliendo and PSF Holdings jointly filed an identical lawsuit on the same date in the same court. *See* Case No. 00-CV-3159. On December 14, 2000 the Court issued an order in Robins' case declaring that:

> Based on the foregoing findings, the Court hereby confirms and approves the assignment from Leslie Robins to PSF Holdings, LLC and its successors and/or assigns of all rights, title and interests to all future Lottery Payments including the right to exercise the cash out options offered by the State of Wisconsin, and the Agreement transferring the Assigned Payments from PSF Holdings, LLC to PSF Trust 2000-2.
>
> Accordingly, the Wisconsin State Lottery shall pay to PSF Trust 2000-2 twelve (12) annual payments each in the amount of $2,781,012.00, net of tax withholding, commencing on or about July 7, 2001 through and including July 7, 2012 as set forth in the

5

> Terms Rider to Sale Agreement for Lottery Prize Payments of
> Leslie Robins and the Evidence of Winning.

An identical order was entered on that same date relating to DeVries-Caliendo.

15.　　On December 21, 2000 the PSF Trust 2000-2 "elect[ed] to convert [its] annuity prize and receive a single cash lump sum as total and complete payment of the Lotto America Grand Prize." Thereafter, the Wisconsin Lottery Division made a single cash lump sum payment to the PSF Trust 2000-2, representing the present value of the stream of future payments due Robins and DeVries-Caliendo, after withholding 28% of the payment for federal income taxes and 6.75% of the payment for state income taxes.

16.　　On December 27, 2000 the PSF Trust 2000-2 issued its first set of Non-Negotiable and Non-Assignable Contingent Installment Notes to Robins and DeVries-Caliendo, each in the sum of $15,567,119. This amount equaled the single cash lump sum payment made by the Wisconsin Lottery Division to the PSF Trust 2000-2 after withholding federal and state income taxes, minus the 3% contractual fee due the PSF Trust 2000-2.

17.　　Following receipt of the single cash lump sum payment made by the Wisconsin Lottery Division to the PSF Trust 2000-2, the PSF Trust 2000-2 challenged the appropriateness of the federal and state income tax withholdings with the Internal Revenue Service (the "IRS") and the State of Wisconsin Department of Revenue.

18.　　In 2001 the IRS agreed with the PSF Trust 2000-2's challenge, and refunded the withheld federal income taxes to it. Robins, DeVries-Caliendo and the PSF Trust 2000-2 subsequently agreed that the PSF Trust 2000-2 would issue a second set of Non-Negotiable and Non-Assignable Contingent Installment Notes to Robins and DeVries-Caliendo at that time for the federal income tax refund, and then issue a third set of Non-Negotiable and Non-Assignable Contingent Installment Notes to them if and when a state

6

income tax refund was received. As a result, on October 15, 2001 the PSF Trust 2000-2 issued a second set of Non-Negotiable and Non-Assignable Contingent Installment Notes to Robins and DeVries-Caliendo, each in the sum of $6,680,568. This amount equaled the federal income tax refund, minus the 3% contractual fee due the PSF Trust 2000-2.

19.    At the time it refunded the federal income taxes withheld by the Wisconsin Lottery Division to the PSF Trust 2000-2, the IRS also paid the PSF Trust 2000-2 interest of $321,069 on the withholdings. The withheld federal income taxes and the interest paid on that amount together represented the "tax refund." In return, the PSF Trust 2000-2 paid $289,000 of that amount to Robins and DeVries-Caliendo (50% to each), representing the full amount of the interest paid by the IRS minus certain agreed upon fees due PSF Holdings, including $25,000 for fees incurred by the PSF Trust 2000-2 to an outside accounting firm in connection with its challenge of the withheld federal income taxes. At that time, Terlizzi advised Robins and DeVries-Caliendo that, while in his opinion "[t]he disposition of the interest earnings was simply not contemplated in the agreements," paying the interest to Robins and DeVries-Caliendo (minus the accounting fees incurred to obtain the refund) was the "right thing" to do and the "equitable thing" to do and, although not expressly addressed in the language of the agreements, was certainly within "the spirit of the arrangement."

20.    In 2005 the State of Wisconsin Department of Revenue, like the IRS, agreed with the PSF Trust 2000-2's challenge to the withheld state income taxes, and on March 8, 2005 refunded those taxes in the sum of $3,233,178.38 to the PSF Trust 2000-2. In addition, on that same date the State of Wisconsin Department of Revenue paid the PSF Trust 2000-2 interest of $1,160,725.33 on the withheld state income taxes. Both payments came in one check and constituted the "tax refund." However, no one affiliated with the PSF Trust

7

2000-2, or any of its related entities, advised Robins or DeVries-Caliendo of its receipt of the state income tax refund or the interest paid thereon, until later questioned by a representative of Robins and DeVries-Caliendo.

21. On May 18, 2005, a representative of Robins and DeVries-Caliendo told Terlizzi that he "learned that the audit by the Wisconsin Department of Revenue has been settled and a check for the withholding amounts from the lottery winnings of DeVries-Caliendo and Robins had been paid to the Trust plus the applicable interest," and "demand[ed] . . . that third notes be issued to Robins and Caliendo for the amount of the refund including all interest, taxes withheld, less fees owed to Peachtree under the terms of the Sale Agreement." He went on to state that "[t]his money should be deposited with Deutsche Bank pursuant to the terms of the original Agreement and the Trust," which require that "[i]mmediately upon its receipt of the tax refund, the Trust will deposit said refund" into the accounts of Robins and DeVries-Caliendo.

22. In response, on June 3, 2005 a representative of the PSF Trust 2000-2 advised the representative of Robins and DeVries-Caliendo that "the third and final notes are in the process of being issued" by the PSF Trust 2000-2 in the sums of $1,610,106, and "apologize[d] for any delay in issuance." For reasons never explained to Robins or DeVries-Caliendo, the third set of Non-Negotiable and Non-Assignable Contingent Installment Notes did not get issued to Robins and DeVries-Caliendo until more than three months later, on September 23, 2005, and the $1,610,106 did not actually get deposited into their accounts until September 29, 2005. Worse yet, the PSF Trust 2000-2 has refused to pay Robins and DeVries-Caliendo the $1,160,725.33 representing the interest portion of the "tax refund" it received from the State of Wisconsin Department of Revenue, contending that it has no legal obligation to do so, despite the repeated requests of Robins and DeVries-Caliendo.

8

23. Each of the Non-Negotiable and Non-Assignable Contingent Installment Notes issued by the PSF Trust 2000-2 to Robins and DeVries-Caliendo states that "an annual guaranty fee not to exceed 0.85% of the average account balance of the account will be charged quarterly to the account." This fee was represented to Robins and DeVries-Caliendo as the fee Deutsche Bank was charging the PSF Trust 2000-2 for its issuance of an Irrevocable Standby Letter of Credit to guaranty payment to Robins and DeVries-Caliendo of the Non-Negotiable and Non-Assignable Contingent Installment Notes.

24. Robins and DeVries-Caliendo have since learned that these representations were false. While it is true that Deutsche Bank is apparently being paid a guaranty fee of 0.85% from the PSF Trust 2000-2, which in turn charges that fee to Robins and DeVries-Caliendo, the bank is paying 50% of that fee to PSF Holdings as part of an undisclosed kick-back scheme. Upon being questioned about this kick-back scheme, various trustees of the PSF Trust 2000-2 took immediate action to remove Robins' and DeVries-Caliendo's representative as a trustee of the PSF Trust 2000-2, and further advised Deutsche Bank that "until further notice, no information regarding the aforementioned accounts is to be shared with any party other than Peachtree, . . . the sponsor of the Trust." Had Robins and DeVries-Caliendo known of this kick-back scheme, they would not have agreed to the 0.85% guaranty fee.

## FIRST CAUSE OF ACTION
## RELATING TO THE UNPAID INTEREST

25. Robins and DeVries-Caliendo hereby incorporate by reference the allegations set forth in paragraphs 1-24 of this complaint as if fully set forth herein.

26. Robins and DeVries-Caliendo are entitled to the $1,160,725.33 in interest paid to the PSF Trust 2000-2 by the State of Wisconsin Department of Revenue as part of the state "tax refund." The state income tax refund was rightfully due Robins and DeVries-Caliendo,

9

and any interest received on the refunded income taxes (which interest is payment for loss of use of the money), is likewise rightfully due Robins and DeVries-Caliendo. The interest paid by the State of Wisconsin Department of Revenue was money paid for the loss of use of Robins' and DeVries-Caliendo's money, not money due the PSF Trust 2000-2 (except its 3% contractual fee). The PSF Trust 2000-2's refusal to pay the interest to Robins and DeVries-Caliendo, minus the 3% contractual fee, is a breach of contract, is inequitable, unjustly enriches the PSF Trust 2000-2, and is a conversion of Robins' and DeVries-Caliendo's property.

27.     Robins and DeVries-Caliendo have been damaged in the sum of $1,160,725.33, minus the 3% contractual fee owed the PSF Trust 2000-2, as a result of the PSF Trust 2000-2's breach of contract, inequitable conduct, unjust enrichment and conversion. In addition, Robins and DeVries-Caliendo are entitled to 5% prejudgment interest on the $1,160,725.33, minus the 3% contractual fee owed the PSF Trust 2000-2, from March 8, 2005, which is the date on which the State of Wisconsin Department of Revenue paid the interest to the PSF Trust 2000-2, until judgment is entered in this case.

28.     PSF Trust 2000-2 acted maliciously towards Robins and DeVries-Caliendo, or in an intentional disregard of their rights, in refusing to pay them the interest portion of the state "tax refund," thereby warranting an award of punitive damages and treble damages under sections 895.446 and 943.20, Wis. Stats., against it and its sponsors.

## SECOND CAUSE OF ACTION
### RELATING TO THE KICK-BACK SCHEME

29.     Robins and DeVries-Caliendo hereby incorporate by reference the allegations set forth in paragraphs 1-28 of this complaint as if fully set forth herein.

30.     The kick-back scheme entered into between Deutsche Bank and PSF Holdings, or its related entities, was fraudulent, constituted misrepresentation by silence, was a

10

breach of the fiduciary duty owed to Robins and DeVries-Caliendo, and is a conversion of Robins' and DeVries-Caliendo's property.

31. Robins and DeVries-Caliendo have been damaged by the kick-back scheme, and are entitled to recover whatever sums PSF Holdings, or its related entities, received from Deutsche Bank in connection therewith, plus 5% prejudgment interest on that sum from the date of each such payment.

32. PSF Holdings, Peachtree Financial Solutions, and their representatives and related entities, acted maliciously towards Robins and DeVries-Caliendo or in an intentional disregard of their rights, in connection with the kick-back scheme, thereby warranting an award of punitive damages and treble damages under sections 895.446 and 943.20, Wis. Stats., against them.

WHEREFORE, the plaintiffs, Robins and DeVries-Caliendo, demand that judgment be entered on their behalf and against the defendants, Peachtree Settlement Funding, PSF Holdings, PSF Trust 2000-2 and Peachtree Financial Solutions, jointly and severally, as follows:

1. For compensatory damages in a sum to be determined at trial;

2. For punitive damages in a sum to be determined at trial;

3. For treble damages pursuant to sections 895.446 and 943.20, Wis. Stats.;

4. For their attorney fees;

5. For their taxable costs; and

6. For such other and further relief as the Court deems appropriate.

Robins and DeVries-Caliendo further demand that all issues of fact herein be tried to a 12-person jury.

11

Dated this 29th day of May, 2009.

O'NEIL, CANNON, HOLLMAN, DEJONG S.C.
Attorneys for Plaintiffs

By: _____
Dean P. Laing
State Bar No. 1000032

Post Office Address:
111 East Wisconsin Avenue, Suite 1400
Milwaukee, Wisconsin 53202-4870
(414) 276-5000

12